[S.F. No. 23486. Feb. 8, 1977.]

LARRY SMELTZLEY, Plaintiff and Appellant, v.
NICHOLSON MANUFACTURING COMPANY,
Defendant and Respondent.

COUNSEL

Eugene C. Treaster and David P. Mastagni for Plaintiff and Appellant.

Memering, Stumbos, DeMers, Ford & Norris, John D. Stumbos, Jr., John R. Toy and Roberta Lee Franklin for Defendant and Respondent.

OPINION

**TOBRINER, Acting C. J.**—Plaintiff's original complaint alleged injuries caused by his employers' failure to provide him a safe place to work; his amended complaint, filed after the statute of limitations had run, added a cause of action alleging that his injuries resulted from a defective machine manufactured by defendant Nicholson Manufacturing Company (hereinafter Nicholson). The trial court sustained Nicholson's demurrer without leave to amend, and entered judgment for Nicholson.

We reverse that judgment. In *Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681] and subsequent cases the California courts have established the rule that an amended complaint relates back to the filing of the original complaint, and thus avoids the bar of the statute of limitations, so long as recovery is sought in both pleadings on the same general set of facts. As we shall explain, since plaintiff's amended complaint seeks recovery for the same accident and injuries as the original complaint, it falls within the purview of the foregoing rule, and thus relates back to the date of filing of the original complaint. The trial court therefore erred in holding that plaintiff's cause of action against Nicholson was barred by the statute of limitations.

Plaintiff's leg was amputated as a result of injuries he sustained on March 24, 1971, while operating a debarking machine manufactured by defendant Nicholson. On March 24, 1972, he filed a complaint for personal injuries against his employers and several fictitiously named defendants. His first cause of action alleged that defendants were in control of the Sierra Mountain Mill, and owed plaintiff a duty to provide a safe place to work. Plaintiff asserts that "the place of employment was unsafe, dangerous and defective, all of which was either known or should have been known to the defendants. Nonetheless defendants . . . directed the plaintiff to work at a place of employment which was dangerous, and

through the negligence and carelessness of defendants . . . in failing to provide a safe place to work, caused the plaintiff's leg to be amputated." Plaintiff's second cause of action added allegations that defendants recklessly disregarded plaintiff's safety, thus stating a cause of action under Labor Code section 3601. Both causes of action included a standard paragraph alleging that the true names and capacities of the fictitious defendants were unknown to plaintiff, but that each such defendant "is responsible in some manner for the events and happenings herein referred to, and caused injuries and damages proximately brought to the plaintiff as herein alleged."

On November 6, 1973, two and one-half years after the accident, plaintiff filed a first amended complaint. Substituting defendant Nicholson for Doe I, plaintiff alleged in his first cause of action that Nicholson manufactured the debarking machine which injured plaintiff, that the machine was "defective, dangerous and unsafe for its intended use," and that plaintiff's injury was the proximate result of the defective machine. The second and third causes of action of the first amended complaint restated the causes of action against plaintiff's employers which appeared in the original complaint.

Nicholson demurred to the first amended complaint, asserting that plaintiff's cause of action against Nicholson was barred by the one-year limitation of Code of Civil Procedure section 340, subdivision 3. The trial court sustained the demurrer without leave to amend and entered judgment for Nicholson. Plaintiff appeals from that judgment.

Plaintiff contends that his amended complaint relates back to the date of filing of the original complaint, and thus avoids the bar of the statute of limitations. The decision of this court in *Austin* v. *Massachusetts Bonding & Insurance Co., supra,* 56 Cal.2d 596 and subsequent decisions of the Courts of Appeal support that contention.

In *Austin,* plaintiff's original complaint charged that Pacific States Securities Corporation, its officers, and defendants sued under fictitious names refused to deliver securities and money received on behalf of plaintiff. The complaint alleged that defendants filed a " 'surety bond in the sum of $5,000 for the faithful performance of its duties as a licensed broker.' " (56 Cal.2d at p. 598.) Plaintiff did not allege that defendants were surety on the bond or that plaintiff sought indemnification from the surety. The amended complaint, filed two years after the running of the statute of limitations, nevertheless substituted Massachusetts Bonding for

one of the fictitiously named defendants, and asserted the liability of Massachusetts Bonding under its surety bond for the defalcations of Pacific's officers.

In an unanimous opinion by Chief Justice Gibson, we reversed the trial court's judgment in favor of Massachusetts Bonding. Reviewing the California cases, we rejected both the older cases which decided that any amendment that changed the legal theory of the complaint could not relate back, and the more recent cases which held that an amendment would not relate back if it set forth a wholly different cause of action. (See 56 Cal.2d at p. 601.) "The modern rule," we explained, "is that . . . where an amendment is sought after the statute of limitations has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the *same general set of facts.*" (56 Cal.2d at p. 600.) (Italics added.)

The court then stated the rational foundation for its view in these words: "This rule is the result of a development which, in furtherance of the policy that cases should be decided on their merits, gradually broadened the right of a party to amend a pleading without incurring the bar of the statute of limitations." (*Ibid.*)

Applying the foregoing rule to that case, the court found that both complaints alleged the same misconduct by Pacific and its officers, which misconduct constituted the grounds for the action on the bond added by the amended complaint. We concluded that "both pleadings are thus based on the same general set of facts. . . . Had Massachusetts Bonding been sued by its true name in the original complaint, the amendment changing the character of its obligation from that of a principal to that of a surety would have related back for purposes of the statute of limitations. The fact that it was initially designated by a fictitious name does not warrant a different result." (P. 602.)

Seven years later, in *Garrett v. Crown Coach Corp.* (1968) 259 Cal.App.2d 647 [66 Cal.Rptr. 590], the Court of Appeal applied the principles established by *Austin* to a factual setting indistinguishable from the present case. Plaintiff Garrett's original complaint asserted that the named defendants and Does one through five negligently maintained and operated a school bus, causing the bus to strike plaintiff's vehicle and injure plaintiff. Garrett's second amended complaint, filed after the running of the statute of limitations, substituted Crown Coach Corporation for Doe I, and alleged that Crown negligently designed and

manufactured the bus. The trial court sustained Crown's demurrer without leave to amend.

Relying on *Austin,* the Court of Appeal reversed the court below. Justice Files wrote that "plaintiff is seeking to hold Crown legally responsible for the same accident and the same injuries referred to in the original complaint. The amendment changes the alleged obligation of 'Doe One' from that of an operator to that of a manufacturer. This is no more drastic than the change of theory reflected by the amendment in *Austin.*" (259 Cal.App.2d at p. 651.)

*Garrett* and the instant case present a striking parallel. In *Garrett* the original complaint charged the named and fictitious defendants with liability based upon their operation and maintenance of a bus; in the present case plaintiff charged the named and fictitious defendants with liability based upon their control and operation of a lumber mill. In both cases the original complaint did not state any facts upon which defendants' liability as a manufacturer could be predicated; the amended complaints, however, sought to change the obligation of "Doe One" from that of an operator to that of a manufacturer. Finally, in both cases the amended complaint sought recovery for the same accident and the same injuries as the original complaint. Rarely is a precedent so closely on point.

Nicholson does not assert that *Garrett* was wrongly decided, but unsuccessfully attempts to distinguish that precedent. Nicholson argues that in *Garrett* the original complaint referred to the bus as the cause of the accident, but that plaintiff's original complaint in the present case did not mention a debarking machine. But plaintiff's reference in the original complaint to defendants' control over the lumber mill necessarily includes defendants' control over machinery at that site; plaintiff's assertion of unsafe, dangerous and defective conditions at the mill is sufficiently general to comprehend any danger arising from defective mill machinery.

The crucial fact, moreover, is not whether the original complaint mentioned the debarking machine as the reason the mill premises were dangerous, but that, in the language of *Garrett,* the amended complaint refers to "the same accident and the same injuries referred to in the original complaint." (259 Cal.App.2d 647, 651.) Thus under the reasoning of *Garrett,* since the amended complaint in the present case rests

upon the same general set of facts as the original complaint, it relates back to the filing of the original complaint.

The *Garrett* case found unanimous and express confirmation in a recent decision of this court: *Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825]. In that case plaintiff's initial complaint alleged that city police officers had intentionally killed her husband; the complaint predicated liability of the city upon respondeat superior. The amended complaint charged that "the City was liable for its own negligence in retaining the services of officers known to be dangerous." (2 Cal.3d 575, 584.) Although *Grudt* thus factually differs from the instant case in that it did not, as here, involve the addition of a new party defendant after the lapse of a period of limitation, it did embrace the addition of a new theory of action after such a lapse. This court, relying upon *Austin* and *Garrett* upheld the addition, holding that the counts against the officers and the city "recite the same acts . . . as the gravamen of the action, and the recovery is sought in both counts to compensate plaintiff for the loss of her husband." (P. 584.)

Finally, the recent Court of Appeal decision in *Barnes* v. *Wilson* (1974) 40 Cal.App.3d 199 [114 Cal.Rptr. 839] further extends the principles expounded in *Austin, Garrett* and *Grudt*. Plaintiffs in a wrongful death action alleged that defendants, the owners of the Golden Gloves Tavern, negligently failed to warn the decedent of the danger created by his assailant's presence and negligently failed to protect decedent from the assailant. The fourth amended complaint, filed long after the statute of limitations had run, substituted defendants Theodore and Phyllis Noyd for Does II and III, and alleged that the Noyds, owners of the neighboring Copper Door Tavern, negligently served liquor to the already intoxicated assailant. The trial court sustained the Noyds' demurrer without leave to amend.

In reversing the trial court, the Court of Appeal relied upon the test established by *Austin,* inquiring whether recovery is sought on the same general set of facts. The court concluded that "In the case at bench, just as in *Grudt* v. *City of Los Angeles, supra,* 2 Cal.3d 575, and *Garrett* v. *Crown Coach Corp., supra,* 259 Cal.App.2d 647, plaintiffs' fourth amended complaint seeks to hold the Noyds responsible for the same occurrence and damage alleged in the original complaint. The amendment alleging a cause of action against the Noyds for negligently contributing to the dangerous behavior of the assailant is no more drastic than the amendment in *Grudt* alleging a cause of action against the city

for allegedly retaining the officers with known propensities for violence, or the amendment in *Garrett* alleging a cause of action against the bus company for negligent design and manufacture." (40 Cal.App.3d 199, 205.)

Nicholson does not argue that *Barnes* was incorrectly decided or attempt to distinguish the pleadings in that case from the present case. Nicholson, instead, notes that in *Barnes* the court observed that the plaintiffs cannot be said to have "slept on their rights" (40 Cal.App.3d 199, 206), and insinuates that the contrary is true in the present case. Defendant's demurrer, however, tests only the sufficiency of the pleadings. ■ ■■■ Nothing in the pleadings suggests that plaintiff, after learning of his cause of action against defendant, was dilatory in amending his complaint, or that defendant suffered prejudice from any such delay.[1] (See *Jensen* v. *Royal Pools* (1975) 48 Cal.App.3d 717, 721-722 [121 Cal.Rptr. 805].)

■ The foregoing precedents rest on the fundamental philosophy that "cases should be decided on their merits." (*Grudt* v. *City of Los Angeles, supra,* 2 Cal.3d 575, 585; *Austin* v. *Massachusetts Bonding & Insurance Co., supra,* 56 Cal.2d 596, 600.) In conformity with that policy, we conclude in the present case that plaintiff's amended complaint relates back to the filing of the original complaint. Both complaints issue from the same injuries and the same accident. The original complaint asserts that the injuries were caused by a dangerous condition of the employers' premises; the amended complaint identifies that condition as a defective machine manufactured by Nicholson. Thus, within the rule of *Austin* v. *Massachusetts Bonding & Insurance Co., supra,* 56 Cal.2d 596, the two complaints relate to the "same general set of facts."

In arguing to the contrary Nicholson contends that the facts necessary to establish a right to relief on a theory of failure to provide a safe place to work are different from those required to prove a product liability case; that the two causes of action rest upon different theories and invoke

---

[1]The fact that plaintiff amended his complaint to substitute Nicholson as a defendant after the statute of limitations had run does not establish that plaintiff was dilatory or that Nicholson was prejudiced. As we explained in *Austin,* "The right of a plaintiff to use a fictitious name where he is ignorant of the defendant's true name is one conferred by statute . . ., and it has long been recognized that the purpose of the provision is to enable such a plaintiff to bring suit before it is barred by the statute of limitations and that this procedure does not subject the defendant to undue hardship. . . . A defendant unaware of the suit against him by a fictitious name is in no worse position if, in addition to substituting his true name, the amendment makes other changes in the allegations on the basis of the same general set of facts." (56 Cal.2d at p. 602.)

different legal duties. If plaintiff proved only the facts alleged in the original complaint, Nicholson observes, he would not be entitled to relief from Nicholson; if plaintiff proved only those in the first cause of action of the amended complaint, he would not be entitled to recover from the mill operators.

Nicholson's arguments, however, do not demonstrate that the original and amended complaint here do not relate to the same general set of facts within the *Austin* rule; they merely betray a misunderstanding of *Austin* and subsequent cases. In all of the cases discussed, *supra*, the original and amended complaints rested upon different *theories* and invoked different *legal duties*; consequently in each of those cases the facts necessary to prove liability under the amended complaint differed significantly from those required to prove liability under the original complaint. Thus in every such case proof of the facts alleged in the original complaint would not suffice to establish plaintiff's right to relief against the substituted defendant—otherwise plaintiff would have had no reason to amend the original complaint. In two cases, *Garrett* and *Barnes,* proof of the facts alleged in the amended complaint would not have established a right to relief against the original defendants. Nicholson's argument thus fails to offer any basis for distinguishing the present case from *Austin* and subsequent precedents.

Nicholson's argument not only totally fails to distinguish *Austin* and its progeny, but relies upon principles clearly repudiated in those decisions. ▇▇▇ As *Austin* noted, it has long been held that a change in legal theory will not prevent an amendment from relating back. (56 Cal.2d at p. 600.) And Chief Justice Gibson warned that any attempt to determine whether an amendment related back by inquiring whether it stated a " 'wholly different cause of action' . . . results in confusion and undue restrictions of the right to amend." (P. 601.) Thus the fact that plaintiff's amended complaint in the instant case rests upon a different legal theory and may state a different cause of action than his original complaint is irrelevant under *Austin*; the test is whether the two complaints relate to the same general set of facts. And as we have explained, plaintiff's amended complaint, by seeking recovery for the same accident and injuries as the original complaint, complies with that test.

The judgment dismissing plaintiff's action as to defendant Nicholson Manufacturing Company is reversed.

Mosk, J., Clark, J., Richardson, J., Sullivan, J.,* and Wright, J.,† concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Retired Chief Justice of the Supreme Court sitting under assignment by the Acting Chairman of the Judicial Council.