[Civ. No. 51876. Second Dist., Div. Two. Mar. 12, 1979.]

CORONET MANUFACTURING COMPANY, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
RITCHIE McMAHON et al., Real Parties in Interest.

**COUNSEL**

Laurence A. Dornstein for Petitioner.

No appearance for Respondent.

William M. Shernoff, Gary V. Wild and Kenneth C. Blickenstaff for Real Parties in Interest.

**OPINION**

**COMPTON, J.**—Coronet Manufacturing Company, Inc. (Coronet) petitioned for a writ of mandate to compel the Superior Court of Los Angeles County to enter an order sustaining a demurrer to real parties in interest's second amended complaint for wrongful death.

The superior court's overruling of the demurrer was apparently based on the holding in *Smeltzley* v. *Nicholson Mfg. Co.,* 18 Cal.3d 932 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121]. We initially denied Coronet's petition for mandate. On a petition by Coronet, the Supreme Court granted a hearing and retransferred the matter to this court with directions to issue an alternative writ.

We issued the alternative writ and calendared the matter for oral argument. For reasons which will be discussed, *infra,* we are of the opinion that the peremptory writ should issue but that real parties in interest should be afforded an opportunity to amend their complaint.

Real parties in interest are the parents of a 17-year-old girl who was electrocuted in her home on October 3, 1974. On October 3, 1975, just one day before the running of the statute of limitations, real parties in interest filed a complaint against Sunbeam Corporation and a number of "Does," alleging that the girl was electrocuted while using a defective Lady Sunbeam electric hair dryer.

The complaint contained the usual allegations that each of the defendants was "legally responsible in some manner [for the injury]" and that each, inter alia, "supplied component parts for the Lady Sunbeam Electric Hair Dryer."

The second amended complaint filed February 7, 1977, well over two years after the accident, and served on Coronet May 25, 1977, contained the same general allegations and for the first time identified Coronet as one of the original "Does." The critical amendment alleged that defendants manufactured and supplied component parts of the "Lady Sunbeam Electric Hair Dryer and a *table lamp with a Leviton switch and socket.*" (Italics added.) The action against Sunbeam was dismissed.

Patently the action against Coronet is barred by the statute of limitations unless the allegations of the second amended complaint can

be "related back" to the original complaint. (*Austin* v. *Massachusetts Bonding & Insurance Co.,* 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681].)

The theory of the original complaint was that the hair dryer was the offending appliance. It now appears that real parties in interest have exonerated the hair dryer and targeted on a table lamp with a socket and switch apparently manufactured by Coronet. The connection, if any, between the hair dryer and the lamp is not apparent from the pleadings.

In *Smeltzley* v. *Nicholson Mfg. Co., supra,* 18 Cal.3d 932, the Supreme Court traced the development of the liberal rule of amendment and "relation back" in California, identifying *Austin* v. *Massachusetts Bonding & Insurance Co., supra,* 56 Cal.2d 596, *Garrett* v. *Crown Coach Corp.,* 259 Cal.App.2d 647 [66 Cal.Rptr. 590]; *Grudt* v. *City of Los Angeles,* 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825]; and *Barnes* v. *Wilson,* 40 Cal.App.3d 199 [114 Cal.Rptr. 839], as the cases which provide guidelines for the application of the rule.

The ultimate rule as enunciated in *Smeltzley* is that if an amended complaint rests upon the same general set of facts as the original complaint and refers to the same action and the same injuries referred to in the original complaint, the amended complaint will relate back to the original complaint and thus avoid the bar of the statute of limitations as against defendants later identified as the original "Does." This is true even though the amended complaint may rest on a different legal theory or state a different cause of action.

At first blush the rule, as thus stated, would appear to emasculate the statute of limitations and simply permit an injured party to file a complaint alleging that a number of unknown persons were, without specificity, "somehow" responsible for the injury and then at his leisure amend to include various causes of action against later identified defendants.

The limitations on this apparently open-ended liberality are to be discerned, however, by analysis of the above referenced cases as discussed in *Smeltzley.* The subtle and unarticulated limitations which provide the basis for distinguishing the case at bench are developed by focusing on the phrase "the same accident" and the offending instrumentality.

In *Austin* v. *Massachusetts Bonding & Insurance Co., supra,* 56 Cal.2d 596, the original complaint alleged certain defalcations by a securities broker and further alleged the existence of a surety bond without any allegations as to who the surety was or that indemnification was being sought. A later amendment naming Massachusetts as the surety and alleging its liability under the bond was held to "relate back" as being based on the same general set of facts. There the underlying "accident"—the defalcation of the original broker—remained the same.

*Garrett* v. *Crown Coach Corp., supra,* 259 Cal.App.2d 647, involved an accident in which plaintiff was injured in a collision with a school bus. The original complaint alleged liability on the part of persons who "maintained and operated" the bus. The amended complaint, which was held to "relate back," identified Crown Coach as the manufacturer of the bus and alleged liability on the basis of negligent manufacture and design. Throughout, however, the offending instrumentality was the same bus in the same accident.

In *Grudt* v. *City of Los Angeles, supra,* 2 Cal.3d 575, the complaint alleged that plaintiff's husband was wrongfully killed by the city police. The liability of the city was pleaded on a theory of respondeat superior. The amended complaint alleged an additional theory of active negligence by the city in retaining employees known to be dangerous. The underlying cause of death was always the conduct of the police officers in the same shooting incident.

*Barnes* v. *Wilson, supra,* 40 Cal.App.3d 199, involved the injury to a plaintiff as the result of an assault by an intoxicated individual. The original complaint charged the owners of the bar where the assault occurred. The theory of liability was the negligent failure of the owners to restrain the assailant and protect the plaintiff. The amended complaint charged the owners of a neighboring bar with having, prior to the assault, furnished liquor to the intoxicated assailant. Thus, though the cause of action, the defendants and the theory of liability of the amended complaint were all different from the original complaint, the assailant and the injury were the same. The new defendants were simply added as a part of the chain of causation.

Finally, in *Smeltzley* v. *Nicholson, supra,* 18 Cal.3d 932, plaintiff's leg was amputated on a piece of machinery in an accident on his employer's premises. The original complaint charged the employer and various "Does" with failing to provide plaintiff with a safe place to work. The

amended complaint named the manufacturer of the machine and alleged defective manufacture.

It was there held that the defendants' allegations that the multiple defendants, which included the employer and "Does," had control of the premises where the injury occurred, included control over the machinery at the site. Thus the same general facts were found to exist and the amended complaint "related back." There again the "accident" and the instrumentality were the same throughout.

In the case at bench, although there was just the single electrocution, the first complaint pleaded that the offending instrumentality was the hair dryer and the "accident" was the use of that hair dryer. The amended complaint alleges that the instrumentality was a table lamp and the "accident" was the use of the lamp.

By comparison to the above discussed cases the amendment in the case at bench is as if in *Austin,* the original complaint had charged a securities broker other than the one for whom *Massachusetts* had issued a surety bond, or if in *Garrett* the original complaint had alleged an accident with a totally different vehicle than the bus manufactured by *Crown,* or if in *Grudt* the original complaint had been filed against a different city and alleged an injury inflicted by officers of that latter city, or if in *Barnes* the original complaint had alleged that the assailant was a person other than the one served by the newly charged defendants.

Furthermore, the case at bench is distinguishable from *Smeltzley* in that it is obvious that the defendants had no control over the entire premises of the deceased's home. No duty existed on the part of any defendant generally to maintain a safe condition on the premises as existed in *Smeltzley.*

The difference between being electrocuted by a hair dryer and being electrocuted by a table lamp is as great as being electrocuted by the hair dryer and being poisoned by some improperly processed food found on the kitchen shelf. Although they relate to a single death at a single location they are different "accidents" and involve different instrumentalities.

We do, however, see some possible salvation for real parties in interest in the rationale of *Barnes* v. *Wilson, supra,* 40 Cal.App.3d 199, if Coronet

can be shown to be in the chain of causation of the originally pleaded cause of action involving use of the hair dryer.

It is obvious that in order for the electrocution to have occurred, the hair dryer had to be plugged into an electrical outlet. If real parties in interest can truthfully plead that the hair dryer was connected to the lamp with its Leviton switch and socket, which was manufactured by Coronet, then the amended complaint would be referring to the same "accident," i.e., use of the hair dryer and its components. The amended complaint would be based on the same general set of facts and would relate back.

If, on the other hand, real parties in interest are faced with the problem that deceased was "somehow" electrocuted in her home, but are unable to identify the instrumentality as being connected with the use of the hair dryer as originally alleged, they cannot, because of the bar of the statute of limitations, simply continue to amend and name the manufacturers of the many varied electrical appliances, from toasters to electric blankets, that may have been located on the premises.

Let a peremptory writ of mandate issue directing the trial court to vacate its order overruling Coronet's demurrer to the amended complaint and enter an order sustaining the demurrer with leave to further amend.

Roth, P. J., and Fleming, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied May 10, 1979.