[No. A042561. First Dist., Div. One. Feb. 14, 1990.]

BILL NEWTON, et al., Plaintiffs and Appellants, v.
COUNTY OF NAPA et al., Defendants and Respondents.

**COUNSEL**

Michael S. Sorgen and Joyce Kawahata for Plaintiffs and Appellants.

Paul M. Hoff and Jill E. Barwick for Defendants and Respondents.

OPINION

**NEWSOM, Acting P. J.**—On April 17, 1984, Bill Newton and Merrilee Newton, acting in their own capacity and as guardians ad litem for their five minor children (hereafter appellants), filed a complaint alleging negligent infliction of emotional distress and battery against Napa County and four county agencies—Napa County Sheriff's Department, Napa County Probation Department, Napa County Child Protective Services, and Napa County Human Services Delivery System (hereafter collectively County). Almost four years later following substitution of attorneys, the court granted appellants' motion for leave to file a first amended complaint adding causes of action for false imprisonment, invasion of privacy and violation of the Civil Rights Act of 1871 (42 U.S.C. § 1983). After the first amended complaint was filed on February 11, 1988, County responded by demurring to the complaint on multiple grounds. The court subsequently granted the demurrer and entered a judgment of dismissal from which appellants appeal.

■ As this appeal concerns an order sustaining a demurrer, we will look only to defects appearing on the face of the complaint, accepting as true all the appellants' allegations. (Code Civ. Proc., § 430.30; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 895, pp. 334-335.)[1] The complaint alleges that on or about December 12, 1983, an agency of the county received a telephone call charging Bill and Merrilee Newton with suspected child abuse. At about 8:45 that evening, two deputy sheriffs "in full police uniform and carrying guns," accompanied by officers of the Napa County Probation Department and Child Protective Services, arrived at appellant's residence and knocked on the door. They advised Bill Newton that they had come to investigate a report of child abuse. "Upon entering, and without any further investigation or discussion" with the parents, the officials took each of the children without parental consent to the bathroom of their home where they were required to "disrobe." The officials then proceeded to search their bodies for signs of abuse. Each search involved "inspection of the most private and intimate parts of the body of each minor child by strangers of different sex and by non medical personnel." When the examination revealed no signs of abuse, the officials acknowledged to appellants that the "report of child abuse was unfounded." The complaint further alleges that as a result of the incident appellants suffered severe emotional injuries, resulting among other things in medical expenses, reduced academic performance of the two oldest children, and lost earnings of Merrilee Newton.

---

[1] In the opinion accompanying the notice of ruling, the trial court erroneously alluded to a finding of fact in a ruling on a discovery motion. We ignore this finding as well as the unsupported embellishment of the record contained in the briefs of both parties.

The trial court sustained the demurrer generally on the ground of government immunity to tort liability and, in addition, ruled that the cause of action under the Civil Rights Act of 1871 was barred by the statute of limitations. Appellant's first two assignments of error are directed at the issue of government immunity.

The California Tort Claims Act states the general rule that "[e]xcept as otherwise provided by statute . . . [a] public entity is not liable for any injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).) Apart from the second cause of action, the complaint here premises the County's liability on Government Code section 815.2, which expresses the far-reaching principle that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." The County's liability under this statute is subject to grants of immunity in the Tort Claims Act itself and other legislation. (Gov. Code, § 815, subd. (b); Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.29, p. 71.) County claims immunity both under certain provisions of the Tort Claims Act and under two distinct statutory enactments—the Child Abuse and Neglect Reporting Act (Pen. Code, §§ 11164-11174.3) and the chapter of the Welfare and Institutions Code relating to state child welfare services (Welf. & Inst. Code, § 16500 et seq.).

In its opinion, the trial court relied primarily on a provision of the Child Abuse and Neglect Reporting Act as construed by *Storch* v. *Silverman* (1986) 186 Cal.App.3d 671 [231 Cal.Rptr. 27]. (See also *Kirkorian* v. *Barry* (1987) 196 Cal.App.3d 1211 [242 Cal.Rptr. 312]; *McMartin* v. *Children's Institute International* (1989) 212 Cal.App.3d 1393 [261 Cal.Rptr. 437].) The Act requires child care custodians, health practitioners and employees of a child protective agency to report suspected instances of child abuse discovered within the scope of their employment. (Pen. Code, § 11166.) Penal Code section 11172, subdivision (a), confers a broad grant of immunity to persons reporting child abuse to appropriate authorities: first, it gives unqualified immunity to child care custodians, health practitioners, employees of child protective agencies and commercial film and photographic print processors who report suspected child abuse; and, secondly, it provides that "any other person" is immune from liability "unless it can be proven that a false report was made and the person knew that the report was false" or made it "with reckless disregard of the truth . . . ."

In *Storch* v. *Silverman, supra*, 186 Cal.App.3d 671, a gynecologist treating a 10-year-old girl recommended that she be examined in a hospital

under general anesthesia. A pediatrician performing the examination took several vaginal cultures which were submitted to a pathologist who found " 'numerous degenerating structures, consistent with degenerating sperm.' " (*Id.* at p. 674, fn. 2.) The gynecologist then reported the suspected sexual abuse of the girl to the county public social services agency. Laboratory tests performed by the sheriff's department and the coroner's office, however, did not reveal the presence of sperm and the case was soon closed. The girl and her parents then sued the three physicians and the hospital, alleging malpractice and negligent infliction of emotional distress. Affirming a judgment of dismissal, the court held that Penal Code section 11172 grants medical practitioners an absolute immunity from civil liability for reporting an instance of suspected child abuse to a child protective agency, without regard to possible negligence in making the report or even knowledge of its falsity. This immunity extends to others who participated in gathering or transmitting information on which the report was based. (*Id.* at p. 681.)

The trial court reasoned that the immunity construed in *Storch* extended to "employees of a child protective agency who investigate those reports . . . ." This extension, however, goes beyond the actual scope of the statute. The Child Abuse and Neglect Reporting Act serves to encourage and regulate the reporting of suspected child abuse; the immunity conferred by Penal Code section 11172 refers by its terms only to persons making such reports. ■ While the policy, enunciated in *Storch,* of broadly construing this grant of immunity may arguably also be found in other closely related statutes, the statutory language itself extends only to persons reporting child abuse to governmental authorities; it does not apply to actions taken by officials who receive such reports of abuse. The duties and immunities of such officials are to be found rather in the Welfare and Institutions Code.

Section 16500 et seq. of the Welfare and Institutions Code comprehensively regulates state services for the care and protection of children. Welfare and Institutions Code section 16504 is relevant to the issue of civil immunity. As it was in effect in December 1983, the section provided: "Any child reported to the county welfare department to be endangered by abuse, neglect, or exploitation shall be eligible for initial intake and assessment services. Each county welfare department shall maintain and operate a 24-hour response system. An immediate in-person response shall be made by a county welfare department social worker in *emergency situations* in accordance with regulations of the department." (Italics added.) In 1987, the Legislature wisely amended the section to direct the county to assess the credibility of reports of child abuse before taking action.[2] But in 1983 the

---

[2] The following sentences were added to the end of the section: "However, an in-person response is not required when the county welfare department, based upon an assessment, deter-

County's duty to screen reports prior to investigation and its right to reject apparently untrustworthy reports was unclear; the statutory language merely imposed a peremptory and unqualified duty to respond to reports of child abuse "in emergency situations in accordance with regulations of the department."

Assuming that an emergency existed, Welfare and Institutions Code section 16504 provides grounds for immunity from appellants' causes of action for negligent infliction of emotional distress and invasion of privacy. Welfare and Institutions Code section 16513 provides: "Anyone participating in good faith in the making of a report pursuant to this chapter shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed." Similarly, Government Code section 820.4 provides: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law . . . ." (Cf. Gov. Code, § 820.6.) ▮ Under these provisions, county employees cannot be held liable for the performance of their duty to investigate child abuse in emergency situations by taking actions such as examining a child for signs of abuse or preparing appropriate reports. This immunity, of course, also applies to the public entity itself. (Gov. Code, § 815.2, subd. (b).)

The question of immunity thus turns on the significance of the term "emergency" in Welfare and Institutions Code section 16504. Appellants argue that, if they can establish that no emergency existed, the county is not immune from liability. County construes said section 16504 as conferring upon it the discretion to determine the existence of an emergency. Under Government Code section 820.2, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Before enactment of the California Tort Claims Act, California courts recognized the immunity of public officials in the performance of discretionary acts. (Van Alstyne, Cal. Government Tort Liability Practice, *supra*, § 1.7, p. 7.) While early cases struggled with a semantic distinction between discretionary and ministerial acts, *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465] first proposed a policy-based distinction. Among the factors relevant to the distinction, the court mentioned "the extent to which governmental liability might impair free exercise of the [agency's] function . . . ." (*Id.* at p. 230.) Building on this precedent, the leading case of *Johnson* v. *State of California* (1968) 69

mines that an in-person response is not appropriate. An assessment includes collateral contacts, a review of previous referrals, and other relevant information, as indicated."

Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352] provided a fuller analysis that underlies current interpretation of Government Code section 820.2. (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 794 [221 Cal.Rptr. 840, 710 P.2d 907]; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 747 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 414-415 [134 Cal.Rptr. 402, 556 P.2d 764].)

■ Without attempting to distill from *Johnson* and its progeny a comprehensive definition or list of relevant policy factors, we observe only that the *Johnson* decision, consistent with *Lipman,* holds that discretionary actions include those involved in the exercise of a function specifically assigned to an agency by statute: "Courts and commentators have therefore centered their attention on an assurance of judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of government. Any wider judicial review, we believe, would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government. Moreover, the potentiality of such review might even in the first instance affect the coordinate body's decision-making process." (69 Cal.2d at p. 793.)

In the case at bar, Welfare and Institutions Code section 16504 requires county welfare departments, receiving reports of child abuse, to carry out an immediate "in-person response" in "emergency situations." ■ Such a response implies a prior determination that an emergency exists. Within the meaning of *Johnson,* this determination is a decision "expressly entrusted" to the county welfare department. Civil liability for a mistaken decision would place the courts in the "unseemly position" of making the county accountable in damages for a "decision-making process" delegated to it by statute.

County welfare department officials thus are immune from liability for the decision to conduct an in-person response to an emergency situation.[3] This immunity should extend to other county officials whom the department reasonably enlists to assist in the investigation.[4] But the immunity does not, however, extend beyond actions implied in the decision to

---

[3] Relying on *Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d 780, 794, appellants argue "that the determination of whether conscious exercise of discretion actually took place is a factual question and therefore not appropriate for resolution at the demurrer stage of the proceedings." But the decision to visit appellants' home necessarily entailed a discretionary decision falling within the scope of the officials' public responsibilities. We do not see the need for any further factual showing.

[4] The general lines of our analysis will also apply to the county probation officer who is subject under Welfare and Institutions Code section 328 to a similar duty to "immediately" investigate when he has "cause to believe" that a child is suffering from abuse.

investigate. (See *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 778 [139 Cal.Rptr. 82].) This point is elucidated by *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281 [57 Cal.Rptr. 312], a decision extensively quoted in *Johnson* which offers some analogy to the present case. There, a state botanist agreed to analyze a plant that a child had ingested and mistakenly reported that it was toxic. Relying on this information, the child's physician made a mistaken diagnosis of her condition and withheld needed medical treatment, leading to the child's death. The court held that the decision to analyze the plant was a discretionary act but the botanist could still be liable for negligence in the performance of the analysis: "Dr. Fuller had already exercised discretion by agreeing to analyze the possibly ingested plant substance to determine its toxicity. This is admitted by respondents to be a service commonly rendered by the state. . . . [E]xercise-of-discretion had ended at that point and thereafter the inquiry would be limited to whether there had been an exercise of due care under a duty assumed. . . . [O]nce the determination has been made that a service will be furnished and the service is undertaken, then public policy demands . . . that government be held to the same standard of care the law requires of its private citizens in the performance of duties imposed by law or assumed." (*Sava* v. *Fuller, supra*, 249 Cal.App.2d at p. 290.)

■ In short, the immunity surrounding the decision to make an "in-person response," if it is to have any substance, must embrace further actions necessary to make a meaningful investigation, but it does not exclude the possibility of tortious conduct in making the investigation. ■ This conclusion provides the county with full immunity to the cause of action for invasion of privacy, partial immunity to the allegations of negligent infliction of emotional distress, but no immunity to the causes of action for battery and false imprisonment. The cause of action for invasion of privacy alleges no gratuitous actions, unnecessary for a proper investigation, that might fall outside the scope of the officials' immunity. The cause of action for negligent infliction of emotional distress, however, alleges negligence not only in the decision to investigate but in certain abusive actions of the county officials, unrelated to the proper performance of the investigation by appropriate county officials. The allegations falling within the scope of County's immunity are underlined in the footnote below. We, of course, express no opinion as to whether the remaining allegations state a cause of action; the decision on appeal concerns only the scope of County's immunity.[5] Lastly, we note that there can be no immunity for a battery or

---

[5] "The defendants, their agents, employees and assigns, acted negligently and unreasonably in the following manner:

a. *In their failure to adopt and follow reasonable rules and regulations to protect Plaintiffs and others similarly situated from unwarranted and unfounded allegations of child abuse;*

false imprisonment committed in the course of an investigation of child abuse.

Appellants' second cause of action, alleging violation of the Civil Rights Act of 1871 presents distinct issues. (Now codified as 42 U.S.C. § 1983, the act will hereafter be referred to as § 1983.) County demurred to the cause of action on three grounds: (1) civil immunity, (2) insufficient specificity in pleading, and (3) the bar of the statute of limitations. The order sustaining the demurrer implicitly raises each of these issues.

 The existence of civil immunity in actions under § 1983 is governed by federal law. (*Martinez* v. *California* (1980) 444 U.S. 277, 284 [62 L.Ed.2d 481, 488, 100 S.Ct. 553].) The decision of *Tenney* v. *Brandhove* (1951) 341 U.S. 367 [95 L.Ed. 1019, 71 S.Ct. 783] established that the statute is compatible "with general principles of tort immunities . . . ." (*Imbler* v. *Pachtman* (1976) 424 U.S. 409, 418 [47 L.Ed.2d 128, 136, 96 S.Ct. 984].) Federal law recognizes both a qualified and an absolute immunity of public officials. Qualified immunity shields public officials from liability only "for decisions made in the good faith exercise of their official responsibilities." (*Sellars* v. *Procunier* (9th Cir. 1981) 641 F.2d 1295, 1300, fn. deleted, cert. den. 454 U.S. 1102 [70 L.Ed.2d 644, 102 S.Ct. 678].) As a practical matter, such qualified immunity will seldom provide grounds for demurrer; a complaint alleging violation of § 1983 is not likely to reveal on its face the presence of

"b. *In the manner in which the laws, rules and regulations of the State of California were implemented and carried out*;

"c. In the training of their employees;

"d. *In the initial handling of said report of child abuse, and in failing to properly, thoroughly and completely investigate the source and basis for the underlying complaint*;

"e. *In failing to verify in any manner whatsoever that the person who reported said alleged child abuse had sufficient and reliable facts upon which to base the allegations of child abuse*;

"f. *In having* four *public officials arrive at Plaintiffs' home with uniforms* and guns, late at night, *without a warrant,* and thereby in creating an intimidating atmosphere, despite knowing there were minor children there;

"g. In failing to properly identify themselves or to reveal to any of the Plaintiffs their rights and obligations in such investigations, or to explain what procedures they would follow;

"h. In failing to first make any inquiries or speak separately with either parent or any of the minor children prior to ordering an inspection;

"i. In failing to ask for or receive a voluntary consent to disrobe the children;

"j. *In conducting an unwarranted and unjustified physical examination of the infant Plaintiffs,* by causing each of the minor children to disrobe and stand naked in the presence of strangers;

"k. *In having non medical personnel examine the children for signs of abuse*;

"l. *In failing to terminate, at any point, said inquiry and investigation, after each child's completed search produced no signs of abuse*;

"m. For being totally insensitive to the fears, apprehensions and obvious anxieties of both plaintiff parents and of the five plaintiff minor children;

"n. In failing to apologize for the gross intrusions into Plaintiffs' home and family life, based on an [*sic*] totally unfounded report of child abuse." [Italics added.]

good faith on the part of the offending officials. ■ The allegations here are free of any facts on which qualified immunity could be based. The cause of action will thus be subject to demurrer only if the County is entitled to absolute immunity.

■ Drawing on venerable common law precedents, the federal courts have long upheld the absolute immunity of judges and grand jurors. In *Imbler* v. *Pachtman, supra*, 424 U.S. 409, 422-423 [47 L.Ed.2d at p. 139], the Supreme Court held that "the same considerations that underlie the common-law immunities of judges and grand jurors" also confer absolute immunity of prosecutors from liability under § 1983. Certain recent cases have applied this absolute immunity to social workers and probation officers dealing with cases of child abuse where their duties are "functionally comparable" to those of a prosecutor. (*Mazor* v. *Shelton* (N.D.Cal. 1986) 637 F.Supp. 330, 335; *Meyers* v. *Contra Costa County Dept. of Soc. Serv.* (9th Cir. 1987) 812 F.2d 1154, cert. denied 484 U.S. 829 [98 L.Ed.2d 59, 108 S.Ct. 98].) ■ It would be untenable, however, to extend this logic to the present case. In visiting appellants' home in response to a report of child abuse, the four officials in question—two deputy sheriffs, a social worker, and a probation officer—performed a function "more like that of a policeman than a prosecutor." (*Doe* v. *County of Suffolk* (E.D.N.Y. 1980) 494 F.Supp. 179, 183.) "The common law has never granted police officers an absolute and unqualified immunity . . . ." (*Pierson* v. *Ray* (1967) 386 U.S. 547, 555 [18 L.Ed.2d 288, 295, 87 S.Ct. 1213].)

The County's second ground for demurrer—insufficient specificity of the allegations—finds support in federal precedents. Departing from the liberal rules of pleading generally sanctioned by rule 8 of the Federal Rules of Civil Procedure, the federal courts have adopted a heightened standard of factual specificity for allegations charging violation of § 1983. (See *Ginter* v. *Stallcup* (E.D.Ark. 1986) 641 F.Supp. 939, 973.) As stated in *Elliott* v. *Perez* (5th Cir. 1985) 751 F.2d 1472, 1479, the federal courts "have tightened the application of Rule 8 where the very nature of the litigation compels it. In the now familiar cases invoking 42 U.S.C. § 1983 we consistently require the claimant to state specific facts, not merely conclusory allegations." A footnote provides a lengthy, but by no means exhaustive, survey of decisions reflecting this policy. (*Id.* at pp. 1479-1480.)

■ We conclude, however, that the demurrer was properly sustained on the ground of the statute of limitations. In § 1983 actions, the federal courts have adopted the most closely analogous state statute of limitation. (*Wilson* v. *Garcia* (1985) 471 U.S. 261 [85 L.Ed.2d 254, 105 S.Ct. 1938].) The one-year limitation for personal injury actions imposed by Code of Civil Procedure section 340 applies to such actions filed in California. (*McMillan* v. *Goleta Water Dist.* (9th Cir. 1986) 792 F.2d 1453, 1456, cert.

den. 480 U.S. 906 [94 L.Ed.2d 519, 107 S.Ct. 1348].) Since the complaint was amended to state a cause of action under § 1983 about four years after the alleged injury, the application of the statute of limitations depends on whether the amended complaint relates back to the original filing.

■ "In *Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596 . . . and subsequent cases the California courts have established the rule that an amended complaint relates back to the filing of the original complaint, and thus avoids the bar of the statute of limitations, so long as recovery is sought in both pleadings on the same general set of facts." (*Smeltzley* v. *Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 934 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121].) "This is true even though the amended complaint may rest on a different legal theory or state a different cause of action." (*Coronet Manufacturing Co.* v. *Superior Court* (1979) 90 Cal.App.3d 342, 345 [153 Cal.Rptr. 366].) The rule has been liberally applied to uphold amendments to the original complaint. (E.g., *Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825]; *Walton* v . *Guinn* (1986) 187 Cal.App.3d 1354, 1360-1361 [232 Cal.Rptr. 451].) Thus, in *Smeltzley* v. *Nicholson Mfg. Co., supra*, 18 Cal.3d 932, the Supreme Court allowed the plaintiff to amend a complaint alleging "injuries caused by his employers' failure to provide him a safe place to work" to add a cause of action "alleging that his injuries resulted from a defective machine" manufactured by a newly named defendant. (*Id.* at p. 934.) The new cause of action, the court reasoned related to " 'the same accident and the same injuries referred to in the original complaint.' " (*Id.* at p. 937.)

■ We consider, however, that the amendment adding the section 1983 cause of action exceeded the scope of the relation-back rule. ■ "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . ." (*Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611, 635, 98 S.Ct. 2018].) Hence, "[i]n order to successfully maintain an action under 42 United States Code section 1983 against governmental defendants for the tortious conduct of employees under federal law, it is necessary to establish that the conduct occurred in execution of a government's policy or custom promulgated either by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." (*Bouvia* v. *County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1087 [241 Cal.Rptr. 239]; *Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 569 [195 Cal.Rptr. 268].)

The offending governmental policy must further result in the deprivation of federally protected "rights, privileges, or immunities."[6] ■ The ap-

---

[6] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

pellants' cause of action is evidently premised on the "right to the preservation of family integrity" recognized in numerous federal cases. (*Duchesne* v. *Sugarman* (2d Cir. 1977) 566 F.2d 817, 825; *Santosky* v. *Kramer* (1982) 455 U.S. 745, 753 [71 L.Ed.2d 599, 606, 102 S.Ct. 1388].) As stated in *Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558, 92 S.Ct. 1208], "the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' "

We may best compare the original cause of action for negligent infliction of emotional distress with the section 1983 action. The two pleadings allege closely related, though distinct, injuries—emotional distress and interference with the private realm of family life. But the alleged causes of the respective injuries—negligent conduct by four public officials and adoption of a county-wide policy interfering with the integrity of family life—are not merely different but well removed in time, place, and factual context. Although the question is close, we conclude that the cause of action under § 1983 is based on a different general set of facts from the cause of action for negligent infliction of emotional distress and therefore is barred by the one-year statute of limitations of Code of Civil Procedure section 340.

The judgment is reversed with respect to the first, third and fourth causes of action of the first amended complaint alleging, respectively, negligence, assault and battery, and false imprisonment, and affirmed with respect to the second and fifth causes of action alleging, respectively, violation of the Civil Rights Act of 1871 and invasion of the right to privacy. Costs to appellants.

Holmdahl, J., and Stein, J., concurred.

---

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (42 U.S.C. § 1983.)