LIU, J.,
Concurring and Dissenting.—I agree with today’s opinion that the Child Abuse and Neglect Reporting Act (CANRA; Pen. Code, § 11166) imposed on the San Bernardino County Sheriff’s Department (Sheriff’s Department) a mandatory duty to inform the county child welfare agency of Christy Kinney’s 911 report of child abuse. (Pen. Code, § 11166, subd. (k); all undesignated statutory references are to this code.) But I do not agree that the officer sent to investigate the incident, Deputy Sheriff Kimberly Swanson, had no duty to report under section 11166, subdivision (a) (section 11166(a)).
There is no dispute that Deputy Swanson was a mandated reporter under CANRA. (§ 11165.7, subd. (a)(34).) Section 11166(a) provides that “a mandated reporter shall make a report to [a child protective agency] whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect.” (Italics added.) I would apply the unambiguous terms of section 11166(a) as written and conclude that Deputy Swanson was required to make a report if her observations of B.H. gave rise to a reasonable suspicion of child abuse.
Instead of following this straightforward analysis, today’s opinion holds that section 11166(a) ‘“does not require a law enforcement officer conducting an investigation of an initial report of child abuse that has been received by *199 an agency to make additional reports about the same incident.” (Maj. opn., ante, at p. 186.) In so holding, the court departs from the plain language of the statute and fashions a judicially invented exception that no party to this litigation has urged.
“Ordinarily, the words of the statute provide the most reliable indication of legislative intent.” (Pacific Gas & Electric Co. v. County of Stanislaus (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) Today’s opinion does not identify any ambiguous language in the reporting requirement of section 11166(a). Instead, the court says there is “a tension in the statutory scheme” due to the fact that “employees of child protective agencies, who perform investigatory functions on behalf of their employer, are designated mandatory reporters.” (Maj. opn., ante, at p. 193.) The court then resolves the “tension” by holding that such employees, though designated as mandatory reporters, have no duty to report when investigating an already reported incident of suspected child abuse.
But the “tension” posited by the court exists only on the premise that a child protective agency employee who is following up on an initial report of suspected child abuse must be performing either an investigative function or a reporting function and cannot be performing both at the same time. The court makes four arguments in defense of this premise, but none is persuasive.
First, the court says “imposing section 11166, subdivision (a)’s reporting duties on Deputy Swanson in the circumstance of this case would not further CANRA’s goals” because the Legislature intended only that “reasonably suspected instances of child abuse be identified and reported.” (Maj. opn., ante, at p. 194; see ibid, [citing CANRA’s use of the terms “instance” and “incident” of child abuse].) “Here, Kinney’s 911 report notified the Sheriff’s Department of the suspected instance or incident of child abuse,” and “Deputy Swanson did not identify a different instance of child abuse, but gathered information concerning the one that had already been reported.” {Ibid.) Thus, the court contends, an additional report by Deputy Swanson would not further CANRA’s goal of ensuring the identification and reporting of each suspected instance or incident of child abuse.
But the court’s narrow reading of the purpose of reporting under CANRA is belied by the statute’s reporting requirements, which go well beyond merely flagging each instance or incident of suspected child abuse. Section 11167, subdivision (a) requires mandated reports to include “the information that gave rise to the reasonable suspicion of child abuse or neglect and the source or sources of that information. If a report is made, the following *200 information, if known, shall also be included in the report: the child’s name, the child’s address, present location, and, if applicable, school, grade, and class; the names, addresses, and telephone numbers of the child’s parents or guardians; and the name, address, telephone number, and other relevant personal information about the person or persons who might have abused or neglected the child.” In addition, “[a]ny mandated reporter who knows or reasonably suspects that the home or institution in which a child resides is unsuitable for the child because of abuse or neglect of the child shall bring the condition to the attention of the [child protective] agency” in the mandated report. (§ 11166, subd. (1).) The reporting form derived from this statute requires the mandated reporter to describe “[w]hat [the] victim(s) said . . . what the mandated reporter observed . . . [and] what [the] person accompanying the victim(s) said . . . [or] similar or past incidents involving the victim(s) or suspect.”
If the purpose of reporting under CANRA were only to flag each instance of suspected child abuse, there would have been no need for the statute to require such detailed information. The Legislature plainly intended the task of reporting to provide relevant agencies with all information known to a mandated reporter regarding an incident of suspected child abuse. This sensibly ensures that child protective agencies will have the most complete information available when setting priorities, allocating resources, and conducting investigations.
Here, Deputy Swanson received the 911 dispatch report in which Kinney reported that B.H. “was at his father[’]s house for the weekend and came home with bruises on his forehead.” This was the extent of the information Deputy Swanson had about B.H.’s injuries when she arrived at the home. In her police report, Deputy Swanson wrote that B.H. had a “cut and bruising above his right eye. He also had small bruises, which appeared to be old, on his upper right arm and on his back.” Even if the Sheriff’s Department had reported the incident to the child welfare agency upon receiving the 911 call, as required by section 11166, subdivision (k), an additional mandated report with Deputy Swanson’s observations (assuming those observations gave rise to reasonable suspicion of child abuse) would have advanced the informational objectives of the statutory reporting requirement.
Moreover, even accepting the court’s view that CANRA’s reporting requirements are concerned only with “instances” or “incidents” of child abuse, I would find the trial court’s grant of summary judgment improper. Today’s opinion says Deputy Swanson “would have been required to report were she dispatched to investigate a report of a suspected incident of child abuse and observed evidence that would sustain an objective suspicion that a different, previously unreported incident or instance of child abuse had occurred.” *201 (Maj. opn., ante, at p. 197.) As noted, Deputy Swanson’s police report observed that B.H. “had small bruises, which appeared to be old, on his upper right arm and on his back.” (Italics added; cf. People v. Mills (1991) 1 Cal.App.4th 898, 911 [2 Cal.Rptr.2d 614] [bruises of various ages on a child are, among other indicators, evidence of past child abuse].) The presence of old bruises on B.H.’s body arguably gave rise to reasonable suspicion of a past unreported incident of child abuse. This triable issue of material fact precludes summary judgment.
Second, the court says it would be an “oddit[y]” if an officer dispatched to investigate a report of child abuse were herself required to make a report. (Maj. opn., ante, at p. 195.) “Section 11170, subdivision (b)(2) requires that on completion of the investigation, the investigating agency shall inform the mandated reporter of the results of the investigation and of any action the agency is taking with regard to the child or family.” {Ibid.) Thus, “at least where an officer sees an investigation of a previously reported incident of child abuse through to its conclusion, the officer presumably would know the results of his or her own investigation and would not need notification by his or her own agency.” {Ibid.)
But this supposed oddity assumes that after an officer makes a mandated report, only that officer will initiate and complete an investigation. Here, if Deputy Swanson had filed a mandated report on top of an initial mandated report filed by the Sheriff’s Department, the child welfare agency might have opened its own investigation. As the court notes, “multiple actors and multiple agencies may be involved in an investigation and in the ultimate decision about what steps to take with regard to the child or family.” (Maj. opn., ante, at p. 195.) The results of the child welfare agency’s investigation would provide helpful follow-up to the officer who made the mandated report, confirming or controverting the officer’s own conclusion as to whether the initial report of suspect abuse was well founded. There is nothing odd about this feedback loop.
Third, the court says that “preliminary determinations of the potential risk to the child and the necessity of intervention made by employees of child protective agencies based on their investigative findings are not ministerial duties; these decisions are subjective, ‘involve a formidable amount of discretion’ and are entitled to immunity.” (Maj. opn., ante, at p. 195.) This is hue but beside the point. Even if Deputy Swanson, as a child protective agency employee, was performing investigative duties that required discretionary judgment entitled to immunity, she was also a mandated reporter with duties that did not require subjective judgment but rather an objective determination of reasonable suspicion. As the court notes, “B.H.’s claim is based on an allegation that Deputy Swanson failed to make a mandatory *202 report under a standard of objective reasonableness’' (maj. opn., ante, at pp. 195-196); B.H. does not claim that Deputy Swanson failed to properly investigate.
Fundamentally, the court does not explain why Deputy Swanson could not have been subject to investigatory and reporting duties at the same time. In enacting CANRA, the Legislature was aware that law enforcement officers would have dual roles as investigators of reported incidents of child abuse and as mandated reporters obligated to file their own reports. If the Legislature had intended one role to take precedence over the other when an officer is following up on a reported incident of suspected child abuse, presumably it would have said so. But no such indication appears in the statute, and nothing suggests it is absurd or impossible for an officer to act in both capacities simultaneously. Indeed, no party in this case contends that Deputy Swanson, though a mandated reporter, had no duty to report in these circumstances. I would apply the plain text of section 11166(a) instead of inventing an exception to the statute as the court does today.
Finally, the court observes that “the different statutory immunities conferred on mandated reporters and on investigators demonstrate that the Legislature distinguished between the two separate functions of reporting and investigating an incident of abuse.” (Maj. opn., ante, at p. 196.) But again, the fact that reporting and investigating are separate functions, with different standards governing an officer’s duties, does not mean the exercise of one function precludes exercise of the other. And the fact that an officer’s “immunity—either as a mandated reporter or investigator—depends on the particular circumstances alleged to give rise to liability” {ibid.) does not mean the officer must be understood to act in only one capacity at a time. An officer’s entitlement to immunity as well as the scope of that immunity will depend on the officer’s specific acts or omissions measured against the standards applicable to each duty, whether as investigator or as mandated reporter. (Compare Newton v. County of Napa (1990) 217 Cal.App.3d 1551, 1561-1562 [266 Cal.Rptr. 682] [county was immune for conduct relating to investigation of reported child abuse] with § 11172, subd. (a) [absolute immunity for mandated reporters who comply with duties], and § 11166, subd. (c) [criminal liability for mandated reporters who do not comply with duties].) But there is no reason why more than one set of legal duties and immunities cannot govern an officer’s conduct in this context at the same time.
To be sure, a straightforward application of section 11166(a) may result in the same instance of suspected child abuse being reported more than once. But CANRA contemplates a layered reporting system to protect children from abuse. For example, a mandated reporter who has reasonable suspicion of *203 child abuse must make a report even if she has conveyed the information to her employer, supervisor, or another mandated reporter. (§ 11166, subd. (i)(3).) In addition, a mandated reporter must report even when another person who is not a mandated reporter has already done so. (§ 11166, subd. (g); cf. § 11166, subd. (h) [two or more mandated reporters who “jointly have knowledge” of a suspected instance of child abuse may form a “reporting team” and file “a single report”].) The potential benefit of this layered reporting system is apparent in this case: If Deputy Swanson had filed a mandated report, her report would have provided the child welfare agency with more information than what the 911 dispatch report contained.
On the facts here, it is arguable whether Deputy Swanson should have had a reasonable suspicion of child abuse. For purposes of section 11166(a), “ ‘reasonable suspicion’ means that it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training and experience, to suspect child abuse or neglect. ‘Reasonable suspicion’ does not require certainty that child abuse or neglect has occurred nor does it require a specific medical indication of child abuse or neglect; any ‘reasonable suspicion’ is sufficient.” (§ 11166(a)(1).) Applying this standard to what Deputy Swanson observed when she visited B.H., I believe there is a triable issue of material fact as to whether Deputy Swanson’s observations gave rise to a reasonable suspicion of child abuse and, if so, whether she fulfilled her duty to report under section 11166(a). Accordingly, I would reverse the grant of summary judgment in favor of Deputy Swanson and the Sheriff’s Department. Although the Court of Appeal held that Government Code section 821.6 immunized Deputy Swanson from any reporting liability, I see no need to opine on immunity in advance of a proper determination of whether Deputy Swanson did not comply with section 11166(a).
In all other respects, I join the court’s opinion.