Filed 10/10/14  Whitcomb v. Bonnheim CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KATHRYN A. WHITCOMB, | |
| Plantiff and Appellant, | E059851 |
| v. | (Super.Ct.No. INC1302116) |
| WILLIAM S. BONNHEIM, et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge. Affirmed.

Kathryn A. Whitcomb, in pro. per., for Plaintiff and Appellant.

Law Office of Toni Eggebraaten and Toni Eggebraaten for Defendants and Respondents.

Plaintiff and appellant Kathryn A. Whitcomb filed an action for professional negligence against defendants' and respondents' attorney William S. Bonnheim and William S. Bonnheim, a professional law corporation (for convenience, defendants will

1

be referred to collectively as attorney Bonnheim). Plaintiff appeals after the trial court sustained attorney Bonnheim's demurrer without leave to amend, on the ground that the statute of limitations had expired. We affirm.

FACTS AND PROCEDURAL HISTORY

Because the appeal arises on demurrer, we take the facts as pleaded in the first amended complaint, the operative pleading. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

In October 2009, plaintiff consulted with attorney Bonnheim for legal help regarding her financial affairs. She sought assistance with a loan modification of her home mortgage, and possibly bankruptcy protection. Plaintiff had received a determination of disability, but the disability had affected plaintiff's earning capacity, and she was having trouble making the payments on her home. Attorney Bonnheim told plaintiff that he would apply for a modification of her home loan to reduce the monthly payments, and he would file a lawsuit against appropriate parties for causes of action related to the loan. Attorney Bonnheim also told plaintiff that, if necessary, he would seek bankruptcy protection for her, to prevent the loss of her home to foreclosure and a trustee's sale.

Plaintiff paid attorney Bonnheim a retainer of $4,400 for this work. Attorney Bonnheim did not provide a written legal services contract to plaintiff.

2

According to plaintiff's complaint, attorney Bonnheim failed to put much, if any, effort into seeking a loan modification, but proceeded to file a Chapter 7 bankruptcy petition on November 17, 2009. However, when attorney Bonnheim claimed homestead and other exemptions on plaintiff's behalf, he failed to claim disability exemptions for her. Plaintiff's property was valued at $265,000. If attorney Bonnheim had filed for a disability homestead exemption under Code of Civil Procedure former section 704.730, subdivision (a)(3)(B), plaintiff could have claimed $150,000 in homestead protection. Instead, attorney Bonnheim filed a homestead exemption under Code of Civil Procedure former section 703.140, subdivision (b)(1), which protected far less of plaintiff's equity in the home.

In January 2010, attorney Bonnheim filed an amended Schedule C with the bankruptcy court, but did not change the choice of exemptions. In February 2010, the bankruptcy trustee in plaintiff's case filed a motion objecting to plaintiff's claim of exemptions, stating, "The Debtor . . . has elected the exemption set under CCP Section 703.140, and has sought to exempt the following items, among others: (1) the equity in her home . . . for $20,725 under 703.140(b)[(1)]; . . . and (3) various other items of personal property, . . . in an amount totaling $15,626. Because the Debtor used the entire dollar amount available under 703.140(b)(1) to protect the Equity, the Debtor's total exemption amount under 703.140(b)(5) is limited to $1,100. Thus, the Debtor has exceeded the available dollar amount under this exemption and the Trustee objects to the amount claimed to protect the Personal Property. . . ."

In April 2010, attorney Bonnheim filed another amended Schedule C; this time he claimed exemption under Code of Civil Procedure section 704.010, et seq., rather than section 703.010, et seq., but he claimed an exemption of $175,000 on her behalf for the real property. Although the exemption had been increased to $175,000 in 2010, plaintiff was limited to $150,000 because she had filed in 2009.

The bankruptcy trustee withdrew its first objection to the exemptions, and filed a second motion, objecting to the exemptions claimed in plaintiff's newly amended Schedule C. In the second motion, the trustee pointed out that plaintiff purported to claim $175,000 for the equity in her home, but she had filed in 2009. The bankruptcy trustee contended that plaintiff was entitled to claim only $50,000 in equity. The trustee also sought to disallow an amount ($9,000) plaintiff claimed for lost or damaged goods, because the provision plaintiff was claiming under only exempted personal injury claims.

The hearing on the bankruptcy trustee's motion was set for May 27, 2010. Instead of responding to the bankruptcy trustee's motion objecting to the debtor's exemptions, attorney Bonnheim filed another amended Schedule C on that date. The latest amended Schedule C still claimed a $175,000 homestead exemption, but changed the statutory basis for plaintiff's claim for lost and damaged goods. (Code Civ. Proc., § 704.020.)

On June 7, 2010, the bankruptcy trustee applied for an order compelling plaintiff to turn over her vehicle for sale. Plaintiff's claimed exemption was $2,725, and the estimated equity in the vehicle was $24,150. The bankruptcy trustee had made a written demand to plaintiff to turn over the vehicle, but plaintiff had not complied. The same day

4

(June 7, 2010), the court entered an order granting the trustee's motion objecting to plaintiff's claimed exemptions. The court order disallowed plaintiff's homestead exemption of $175,000, and limited plaintiff to $50,000. The $9,000 damages exemption claim was disallowed in its entirety.

The following day, June 8, 2010, the bankruptcy trustee applied for permission to employ a real estate agent to sell plaintiff's home. Then, on June 9, 2010, the trustee filed a motion objecting to attorney Bonnheim's latest amended schedule of claimed exemptions, and seeking sanctions against plaintiff. A hearing on the objection and sanctions motion was set for July 15, 2010.

Before the date scheduled for the sanctions hearing, attorney Bonnheim filed a substitution of attorney, removing himself as the attorney for plaintiff's estate, and substituting in attorney Gene E. O'Brien. The substitution of attorney O'Brien was deemed filed on June 23, 2010. Plaintiff did not directly pay any monies to attorney O'Brien at that time; the first amended complaint states that attorney Bonnheim "gave Mr. O'Brien $500.00, presumably from [plaintiff's] payment, to substitute in as attorney of record for [plaintiff] and take over her bankruptcy." About three months earlier, in March 2010, attorney Bonnheim had first told plaintiff that he needed to substitute out of the case, because he had never handled a bankruptcy where there were substantial assets in the bankruptcy estate. Plaintiff learned for the first time that attorney Bonnheim had misrepresented his qualifications and competence to represent her in the bankruptcy he had urged her to file.

5

Attorney O'Brien attempted to rectify attorney Bonnheim's mistakes, filing a motion on June 30, 2010, objecting to the disallowance of a higher homestead exemption ($150,000) for plaintiff, and objecting to the order to turn over her vehicle. In the alternative, attorney O'Brien moved to dismiss the bankruptcy proceeding. Attorney O'Brien explained to the court plaintiff was disabled, which limited her ability to earn, and made her eligible for a larger homestead allowance. The order to turn over her vehicle would be a hardship for plaintiff, as there was no nearby public transportation. In addition, attorney O'Brien alleged that plaintiff had been misadvised by attorney Bonnheim to file for bankruptcy in the first place, without adequate advisements about the process or about the rights she would be giving up, and without knowledge of attorney Bonnheim's inexperience. The bankruptcy trustee opposed attorney O'Brien's motions. The court set a hearing for August 12, 2010, on attorney O'Brien's motion to dismiss.

In the meantime, the bankruptcy court granted the trustee's request to turn over plaintiff's vehicle for sale, but stayed the order. In addition, the court sustained the trustee's objections to plaintiff's claimed exemptions; setting the homestead exemption amount at $50,000; disallowing the $9,000 for damaged property; and imposing sanctions of $1,960 against attorney Bonnheim.

On September 3, 2010, the bankruptcy court signed an order granting attorney O'Brien's motion to dismiss the bankruptcy proceeding, but imposed two conditions: Plaintiff would be required to pay the trustee's administrative costs of $9,831.72, and she

6

would be barred from filing another bankruptcy petition for a period of one year. The dismissal would not be filed until the bankruptcy trustee filed a declaration stating that the costs had been paid.

Plaintiff's financial condition had worsened, in part because of the advice of attorney Bonnheim to stop making payments on her mortgage, and she was unable to pay the bankruptcy trustee's costs. About a year later, in November 2011, the bankruptcy trustee again filed a request for an order to turn over plaintiff's vehicle for sale. The bankruptcy trustee requested a writ to take possession of the vehicle if plaintiff did not voluntarily surrender it. A hearing on the trustee's motion was set for January 2012.

In March 2012, the court ordered plaintiff to turn over her vehicle to the bankruptcy trustee. Attorney O'Brien was able to negotiate an agreement that the bankruptcy trustee would accept a cashier's check for $7,000 as payment in full, in lieu of taking plaintiff's vehicle. Plaintiff was unable to pay the full amount. She paid $5,000 to the bankruptcy trustee "on or after April 2, 2012," and a further $200 in November 2012. Plaintiff has been unable to pay the balance of $1,800. Consequently, her bankruptcy petition has not been dismissed, and the commencement of the one-year period in which she is barred from filing another bankruptcy petition has been postponed.

According to the register of actions, plaintiff filed her original complaint against attorney Bonnheim in this action on April 2, 2013. She filed the operative pleading, the first amended complaint, on April 24, 2013. Attorney Bonnheim demurred to the first amended complaint, asserting that the statute of limitations had expired on plaintiff's

7

claim. Plaintiff opposed the demurrer. She argued that the statute of limitations had not expired, because the statute was tolled until she suffered "actual injury," and she had not suffered any actual injury until April 2, 2012, when she paid $5,000 to the bankruptcy trustee in partial compliance with the conditions of her bankruptcy dismissal. The trial court sustained the demurrer without leave to amend.

Plaintiff now appeals.

## ANALYSIS

### I. Standard of Review

We review an order sustaining a demurrer without leave to amend under well-established rules: " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

8

II.  The Trial Court Properly Sustained the Demurrer Without Leave to Amend

The applicable statute of limitations is Code of Civil Procedure section 340.6:

"(a)  An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.  If the plaintiff is required to establish his or her factual innocence for an underlying criminal charge as an element of his or her claim, the action shall be commenced within two years after the plaintiff achieves postconviction exoneration in the form of a final judicial disposition of the criminal case.  Except for a claim for which the plaintiff is required to establish his or her factual innocence, in no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1)  The plaintiff has not sustained actual injury.

"(2)  The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.

"(3)  The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.

"(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

"(b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of that act or event."

Here, plaintiff became aware of attorney Bonnheim's wrongful acts and omissions at least by March 31, 2010, when, in a meeting with plaintiff and attorney O'Brien, attorney Bonnheim informed plaintiff that he would need to substitute out of the case, because he had never before dealt with a bankruptcy estate that had substantial assets. Plaintiff's complaint specifically alleges that, on the date of that meeting, plaintiff "discovered for the first time that [attorney] Bonnheim had misrepresented his qualifications and competence to represent her in the bankruptcy he urged her to file."

However, the one-year statute of limitations was tolled at that time, because attorney Bonnheim continued to represent plaintiff, and because, arguably, plaintiff had not yet sustained "actual injury" from attorney Bonnheim's wrongful acts and omissions.

Attorney Bonnheim ceased representing plaintiff on or about June 23, 2010, when he filed a substitution of attorney, replacing himself with attorney O'Brien. The tolling of the one-year statute ended at that time, unless it continued to be tolled by the provision requiring that plaintiff have suffered "actual injury" from attorney Bonnheim's wrongful acts and omissions. The crux of the matter is: what constitutes "actual injury"?

Historically, *Budd v. Nixen* (1971) 6 Cal.3d 195, was the leading case on the issue: "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. [Fn. omitted.] Prosser states the proposition succinctly, 'It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred.' (Prosser, Law of Torts (4th ed. 1971) § 30 at p. 144.) [¶] The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citations.] Any *appreciable and actual harm flowing* from the attorney's negligent conduct establishes a cause of action upon which the client may sue. [¶] Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct. [Citations.]" (*Id.* at pp. 200-201, italics added.)

One of the ways in which a client suffers actual damage is when the client is compelled, as a result of the attorney's error, to " 'incur and pay attorney's fees and legal costs and expenditures.' " (*Budd v. Nixen*, *supra*, 6 Cal.3d 195, 201.)

Attorney Bonnheim contends that plaintiff here suffered actual injury when she engaged attorney O'Brien to represent her, and attorney Bonnheim gave $500 to attorney O'Brien. The first amended complaint alleges that plaintiff "was not required to pay any attorney fees to [attorney] O'Brien; [attorney] Bonnheim gave [attorney] O'Brien $500.00, presumably from [plaintiff's] payment, to substitute in as attorney of record for [plaintiff] and take over her bankruptcy." Attorney Bonnheim argues that plaintiff suffered actual harm when he made the $500 payment to attorney O'Brien, because, as the first amended complaint alleges, the money " 'presumably [came] from [plaintiff's] payment,' " i.e., the original $4,400 retainer plaintiff had paid to attorney Bonnheim when she engaged him. However, as plaintiff pointed out in her opposition to the demurrer, she was not out of pocket any money to pay attorney O'Brien; there was nothing in the first amended complaint which indicated that the money would have been refunded to plaintiff if it had not been paid to attorney O'Brien. Plaintiff lost nothing; only attorney Bonnheim lost $500 of the funds plaintiff had paid him.

Plaintiff urges that she did not suffer any actual injury until she made a partial payment of $5,000 of the bankruptcy trustee's administrative fees, which had been ordered as a condition of dismissal of the bankruptcy proceeding. The first amended complaint alleged that plaintiff had made that payment "on or after April 2, 2012." If the

12

date was actually April 2, 2012, then plaintiff calculated that she had one year, or until April 2, 2013, to file her action. The register of actions shows that plaintiff did file her original complaint on April 2, 2013.

Plaintiff argues that the first amended complaint, filed April 24, 2013, relates back to the filing date of the original complaint, and that her action is therefore timely. Attorney Bonnheim responds that plaintiff has waived any argument that the first amended complaint relates back to the date of the original filing, because plaintiff failed to include a copy of the original complaint in the record on appeal. Attorney Bonnheim argues that, in the absence of the original complaint, the record is insufficient to show that the original complaint pleaded the same general facts as the first amended complaint, an essential showing to support a relation-back claim. (See *Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 934, 939-940.) On the court's own motion, we have taken judicial notice of the original complaint in the action. It is based on the same general facts as the first amended complaint;[1] the first amended complaint therefore does relate back to the date of original filing.

---

[1] The original complaint alleged that attorney Bonnheim had "failed in filing the bankruptcy action to use the proper set of exemptions and thereby placed assets of plaintiff, in particular her house and her car, at risk of being seized by the appointed trustee for payment of creditors when said assets should have been exempted from such seizure. Also, defendant failed to respond to motions made by the trustee in a timely manner." Plaintiff also alleged that attorney Bonnheim had never filed a lawsuit for predatory lending as he had promised. The facts underlying the lawsuit are substantively the same as asserted in the first amended complaint.

13

Because the first amended complaint relates back to the initial filing of the original complaint, plaintiff's action was timely, unless she suffered some other actual injury before April 2, 2012.

Attorney Bonnheim suggests that plaintiff suffered actual injury at any of a number of junctures in the bankruptcy action, such as when the bankruptcy trustee first raised objections to plaintiff's claimed exemptions (first objection motion, Feb. 2010), or when the bankruptcy court entered an order in June 2010 granting the bankruptcy trustee's motion and limiting plaintiff's exemptions, or when the bankruptcy court granted the trustee's motion (Jun. 2010) to appoint a realtor to sell plaintiff's home, or when the court entered the dismissal order (Sep. 2010), requiring plaintiff to pay the bankruptcy trustee's administrative costs. In addition, the first amended complaint stated its cause of action in part by alleging that attorney Bonnheim's wrongful acts had damaged her by, for example, advising her, based on a misunderstanding of loan modification requirements, to default on her mortgage payments. The first amended complaint alleged that plaintiff stopped making payments on the mortgage in approximately June 2010, and that the order to pay the bankruptcy trustee's administrative costs "imposed a tremendous burden upon" her, because her disability payments and modest earnings from her job "provided just enough for her to pay her living expenses. Additionally, because of [attorney] Bonnheim's advice to her that she had to stop paying her monthly Loan payments on the Home, she had become delinquent on the Loan and had been struggling to find money to resume those payments and cover

14

the accumulated past due amount.  Therefore, she had no money to immediately pay the Trustee."  The first amended complaint alleged that, once the dismissal of the bankruptcy is eventually entered, plaintiff will lose the benefit of the ongoing bankruptcy stay.  Then she will be subjected to collection efforts by creditors for obligations that would have been discharged if attorney Bonnheim had handled the bankruptcy properly.  "Among those financial obligations she will face is the past due amount [plaintiff] owes on the Loan for her Home, on which she was current before [attorney] Bonnheim incorrectly advised her to stop making payments on the Loan in order to be eligible for a Loan modification."

The question is whether any of these events constituted "actual injury" so as to stop the tolling of the statute of limitations.

In *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, the California Supreme Court explained that the term "actual injury" is intended to focus on the fact of damage, rather than digressing into quantitative analysis of how much damage is sufficient to trigger a limitation period.  (*Id.* at p. 749.)

"*Budd*'s [*Budd v. Nixen*, *supra*, 6 Cal.3d 195] basic premise was that a plaintiff could not assert a cause of action for legal malpractice, and hence the limitations period should not commence, until the plaintiff sustained some damage occasioned by the attorney's negligence.  [Citation.]  *Budd* recognized that 'actual loss or damage resulting from the professional's negligence' was an essential element of a cause of action in tort for professional negligence.  [Citation.]  Thus, *Budd* held that the statute of

15

limitations began to run when the plaintiff sustained loss or damage from the attorney's negligence that allowed the plaintiff to assert a malpractice cause of action. [Citation.] In section 340.6's terms, the one-year limitations period that commences when the plaintiff actually or constructively discovers the attorney's wrongful act or omission is no longer tolled after the plaintiff sustains actual injury, i.e., when the plaintiff can plead a legal malpractice cause of action." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, *supra*, 18 Cal.4th 739, 749.) The California Supreme Court went on to elucidate the test, derived from *Budd*, for determining actual injury. The court, as we have already done, above, quoted *Budd* on the issue, to the effect that mere negligence or breach of professional duty is not actionable unless it causes "appreciable harm." Nominal damage, speculative damage, or an unrealized threat of future harm do not constitute an actual, actionable injury. (*Id*. at pp. 749-750.)

Plaintiff contends that the incidents identified by attorney Bonnheim—the bankruptcy trustee's initial objections in February 2010 to plaintiff's claimed exemptions, the order of June 2010 granting the trustee's motion and limiting plaintiff's exemptions, the June 2010 order granting the trustee's motion to appoint a realtor for the sale of plaintiff's home, or the September 2010 order conditionally dismissing the bankruptcy proceeding and requiring plaintiff to pay the trustee's administrative costs—were all speculative harm, or concerned only unrealized future harm. Plaintiff points out that exemption claims are frequently amended in bankruptcy cases, such that the trustee's objections to plaintiff's initial Schedule C did not cause any specific harm. Indeed,

16

attorney Bonnheim did amend plaintiff's Schedule C to claim different exemptions, and the bankruptcy trustee voluntarily dismissed its initial motion objecting to plaintiff's exemptions. Similarly, the bankruptcy court's order granting the trustee's second objection motion, sustaining the objections and limiting plaintiff's objections, was ultimately superseded by the court's order to dismiss the bankruptcy petition. Plaintiff's petition will be dismissed, and any order limiting her exemptions in a bankruptcy proceeding will be moot. The order granting the bankruptcy trustee's motion to appoint a realtor to sell plaintiff's home was also obviated by the dismissal order; no sale of plaintiff's home is contemplated in a bankruptcy proceeding. Plaintiff incurred no actual injury from the bankruptcy trustee's objection motion, the order limiting plaintiff's objections, or the order appointing a realtor.

Plaintiff's first amended complaint alleged that her financial condition worsened as a result of taking attorney Bonnheim's erroneous advice to default on her mortgage. The first amended complaint makes clear, however, that the bankruptcy petition, which has not yet been dismissed, has effected an automatic stay of proceedings on the default. When the bankruptcy is eventually dismissed, then the stay will be lifted, and plaintiff will have to deal with the consequences of the default. At this time, based upon the allegations of the first amended complaint, it is at least arguable that those consequences remain in the future. Future, unrealized harm is insufficient to trigger the statute of limitations.

17

However, the order that plaintiff pay for the bankruptcy trustee's administrative costs is a different matter. Once the bankruptcy court entered that order, plaintiff was under an obligation to pay those costs.

The bankruptcy court ordered payment of $9,831.72, but the bankruptcy trustee eventually agreed to accept $7,000 as a complete payment. Because the ultimate amount of costs plaintiff was required to pay had changed, plaintiff suggests that the damage was speculative or unrealized until she actually made a payment. We disagree. It is the fact of injury, and not a particular dollar amount, which gives rise to a completed cause of action. Plaintiff did not appeal the order to pay the bankruptcy trustee's administrative costs; that order is long final. Plaintiff urges that "[n]o actual injury occurred until [she] had to pay money to the bankruptcy trustee . . . . Prior to the actual payment, damages were speculative at best, and speculative damages are not actual damages . . . ." The ultimate amount of damages plaintiff would be required to pay may have been speculative, but the fact of her liability for that obligation was not. Even if she had been unable to make any payments, partial or otherwise, to satisfy the obligation, plaintiff suffered "actual injury" when the court order established her liability to pay for the bankruptcy trustee's costs.

In *Budd v. Nixen*, *supra*, 6 Cal.3d 195, for example, the plaintiff's tort action accrued, if not earlier, "it at least matured on entry of judgment because he clearly then became obligated to pay a considerable sum to the [other party] or to post a bond on appeal. [Citation.]" (*Id*. at p. 202, fn. omitted.) Here, in the same manner, plaintiff's

action matured on entry of the unappealed order to pay costs, because she "clearly then became obligated to pay a considerable sum" to the bankruptcy trustee.

Because we determine that plaintiff, under the undisputed allegations of the first amended complaint, suffered actual injury in approximately September 2010, when the bankruptcy court entered the dismissal order, requiring as a condition of dismissal that plaintiff pay the costs of the bankruptcy trustee, the one-year statute of limitations had expired well before plaintiff filed the instant action for legal malpractice.

The entry of the order to pay the bankruptcy trustee's administrative costs is a fact clearly alleged in the first amended complaint. It is not possible for plaintiff to amend her pleading to avoid the judicial admission that the obligation constituting appreciable harm and actual injury to her, and giving rise to a mature cause of action for professional malpractice, occurred well before April 2, 2012. The trial court properly found that the statute of limitations had expired, and properly sustained attorney Bonnheim's demurrer without leave to amend.

## DISPOSITION

The trial court properly sustained the demurrer on the ground that the statute of limitations for professional malpractice had expired. Plaintiff cannot plead around the statute; the court properly sustained the demurrer without leave to amend.

In the interest of justice, each party is to bear its own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

RICHLI
J.

MILLER
J.