Filed 2/24/15  Levin v. Intrawest Napa Development Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JON LEVIN et al., | |
| Plaintiffs and Appellants, | G049696 |
| v. | (Super. Ct. No. 30-2009-00120021) |
| INTRAWEST NAPA DEVELOPMENT COMPANY, LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  Affirmed.

Talisman Law and Donald E. Chomiak for Plaintiffs and Appellants.

Paul Hastings, Joshua G. Hamilton and Jenifer Q. Doan for Defendant and Respondent.

\*          \*          \*

## I. INTRODUCTION

The original complaint in this case alleged the plaintiffs bought a piece of investment property under false pretenses.  Three years later, the plaintiffs alleged a different theory in an amended complaint.  The new theory was that the contract itself was in violation of a federal statute because it omitted a provision that any buyer would have a right to cure a default during the escrow period.  We agree with the trial court the amended complaint did not relate back to the original.  The original complaint was based on one kind of damage – buying the property under false pretenses.  The amended complaint was based on another – entering into a contract technically deficient under federal law.  Accordingly, we affirm the ensuing judgment based on the running of a three-year statute of limitations.

## II. BACKGROUND

On June 13, 2007, Jon Levin and his wife Colleen signed a contract to buy a condo unit in a Napa Valley resort complex known as Verasa for about $715,000 as an investment property.  The seller signed the contract on June 29, 2007, and the deal actually closed on August 29, 2008.  The way the investment was to work, the Levins would be able to stay in their condo unit 29 nights a year, and the rest of the time the unit would be available to be rented out by the seller-developer, Intrawest Napa Development Company (Napa Development).  The Levins would receive a portion of the rent on the unit, and that income would, of course, help offset the price of the property.

But the rents weren't what the Levins had hoped for, so, in March 2009, they sued Napa Development to rescind the contract based on Napa Development's alleged misrepresentation of one aspect of the transaction:  Would units in the complex that remained unsold to investors – that is, remained developer-owned – be in the pool of units that would be rented out to paying guests?  The Levins thought Napa Development had promised them their unit would not have to compete with developer-owned units.  As

2

they saw the situation, Napa Development's breaking that promise was the reason their rental income was not as high as they had expected.

The original complaint spun two causes of action from Napa Development's inclusion of developer-owned units in the rental pool: Either Napa Development committed (1) intentional fraud in misrepresenting that developer-owned units would not be in the pool of competitors, or, more charitably (2) had made an innocent mistake in making the misrepresentation. Either way, in the March 2009 complaint, the Levins declared the contract of sale rescinded, and demanded their money back in two causes of action denominated "rescission."[1] About three months later, in June 2009, the Levins added money-damage claims in a first amended complaint based on Napa Development's fraud in misrepresenting the nature of the pool of competitor rentals.

A little more than a year went by. Then, on September 22, 2010, the Levins filed a second amended complaint, with a new theory of wrongdoing by Napa Development and a new way in which they had allegedly been injured: violation of a federal law land sale law known as "IlSA" or the Interstate Land Sales Full Disclosure Act, set out at 15 U.S.C. section 1703, passed by Congress back in 1968.[2]

In broad overview, ILSA's main purpose might be informally described as trying to prevent land developers from conning investors and buyers into thinking they are buying into a beautiful resort when in reality all they are getting is some inaccessible acreage in the middle of the desert, miles from the nearest utilities. ILSA was intended to do for land sales what the Securities Act of 1933 did for stock sales – facilitate full disclosure. (See *Bodansky v. Fifth on Park Condo, LLC* (2d Cir. 2011) 635 F.3d 75, 80

---

[1] The original complaint sought "Restitution After Rescission (Intentional Misrepresentation)" and "Restitution After Rescission (Mistake or Innocent Misrepresentation)."

[2] All undesignated statutory references in this opinion are to Title 15 of the United States Code. All undesignated references to sections and subdivisions are to 15 U.S.C. section 1703. All undesignated references to any subdivision are to 15 U.S.C. section 1703, section (d).

3

["In 1968, Congress passed . . . the Interstate Land Sales Full Disclosure Act ('ILSA')
. . . . Its striking resemblance to the Securities Act of 1933 remained intact."].)

Structurally, section 1703 is set up this way: Subdivision (a) contains a list of duties and prohibitions on interstate land sale developers, including the duty to provide buyers with a printed property report and the duty not to make any false statement in the course of selling land, for example, that water, gas, sewers or golf courses will be provided when they won't be.[3] Subdivision (b) provides an automatic seven-day revocation period for new buyers no matter what,[4] and then subdivision (c) provides for an extra-long *two-year* revocation period for the particular sin of failing to furnish a

---

[3] Here is the complete text of section 1703, subdivision (a):
"(a) Prohibited activities
"It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails --
"(1) with respect to the sale or lease of any lot not exempt under section 1702 of this title–
"(A) to sell or lease any lot unless a statement of record with respect to such lot is in effect in accordance with section 1706 of this title;
"(B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee;
"(C) to sell or lease any lot where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein pursuant to sections 1704 through 1707 of this title or any regulations thereunder; or
"(D) to display or deliver to prospective purchasers or lessees advertising and promotional material which is inconsistent with information required to be disclosed in the property report; or
"(2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title –
"(A) to employ *any device, scheme, or artifice to defraud*;
"(B) to obtain money or property by means of *any untrue statement of a material fact*, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;
"(C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser; or
"(D) *to represent that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed.*" (Italics added.)

[4] "Any contract or agreement for the sale or lease of a lot not exempt under section 1702 of this title may be revoked at the option of the purchaser or lessee until midnight of the seventh day following the signing of such contract or agreement or until such later time as may be required pursuant to applicable State laws, and such contract or agreement shall clearly provide this right."

property report.[5] Subdivision (d) then identifies another three omissions which likewise merit a two-year revocation period.[6] These three omissions are (1) failure to have a recordable land description,[7] (2) failure to provide in the contract that if the buyer defaults, the buyer will get notice of the default and then have twenty days to cure it,[8] and (3) failure to specify certain terms regarding what the buyer might be able to get back if there is a default after the buyer has paid more than 15 percent of the price.[9]

All we know of the second amended complaint is that, as later described by the referee, it raised "a claim for rescission under ILSA." The second amended complaint is not to be found in the fairly voluminous set of appendices provided by both

---

[5] "In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right."

[6] "Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide– [for any one of three required provisions] [¶] may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement. This subsection shall not apply to the sale of a lot for which, within one hundred and eighty days after the signing of the sales contract, the purchaser receives a warranty deed (or, where such deed is not commonly used in the jurisdiction where the lot is located, a deed or grant that warrants at least that the grantor has not conveyed the lot to another person and that the lot is free from encumbrances made by the grantor or any other person claiming by, through, or under him or her)."

[7] "Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide– [¶] (1) a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located."

[8] This is the subdivision on which the Levins ILSA rescission claim in this appeal revolves: Section 1703, subdivision (d)(3) provides: "Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide– [¶] (2) that, in the event of a default or breach of the contract or agreement by the purchaser or lessee, the seller or lessor (or successor thereof) will provide the purchaser or lessee with written notice of such default or breach and of the opportunity, which shall be given such purchaser or lessee, to remedy such default or breach within twenty days after the date of the receipt of such notice; and"

[9] We would caution readers not to rely on our paraphrase of this, last, subdivision (d)(3) provision, which is written in a fairly convoluted way: Section 1703, subdivision (d)(3) provides: "Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide– [¶] (3) that, if the purchaser or lessee loses rights and interest in the lot as a result of a default or breach of the contract or agreement which occurs after the purchaser or lessee has paid 15 per centum of the purchase price of the lot, excluding any interest owed under the contract or agreement, the seller or lessor (or successor thereof) shall refund to such purchaser or lessee any amount which remains after subtracting (A) 15 per centum of the purchase price of the lot, excluding any interest owed under the contract or agreement, or the amount of damages incurred by the seller or lessor (or successor thereof) as a result of such breach, whichever is greater, from (B) the amount paid by the purchaser or lessee with respect to the purchase price of the lot, excluding any interest paid under the contract or agreement,"

parties. Apparently, though (based on Napa Development's later characterization of it), the second amended complaint made a "bare bones ILSA" claim based on the absence of an amended public report at the time the September 2010 second amended complaint was filed.

In October 2011, about 13 months after the filing of the second amended complaint, the Levins sought and obtained leave to file a third amended complaint. The third amended complaint alleged seven causes of action, consisting of one – no longer "bare bones" – subdivision (d) claim, then three subdivision (a) claims, followed by a state claim based on California's own subdivided land act, and, finally, a state unfair competition claim.

As set forth in the third amended complaint, the subdivision (d) claim was based on the failure of the purchase contract to explicitly state that if the buyers defaulted, they would have 20 days to cure the default. While there is no doubt the Levins never defaulted, they asserted the failure to include such a provision in the sales contract automatically gave them a two-year period within which to revoke the contract.

In the spring of 2013 Napa Development filed a summary judgment motion challenging all the claims in the third amended complaint. One of the subdivision (a) claims was voluntarily dismissed by the Levins at the hearing, and all of the remaining claims survived the motion, except the subdivision (d) claim. Under ILSA (15 U.S.C. § 1711(b)), there is a three-year statute of limitations on subdivision (d) claims that begins to run from the signing of the contract,[10] and the referee reasoned the third amended complaint did not relate back to the original complaint of March 2009. More specifically, the referee wrote: "The original Complaint was based on alleged statements

_____

[10]    Section 1711, subdivision (b) provides: "No action shall be maintained under section 1709 of this title to enforce a right created under subsection (b), (c), (d), or (e) of section 1703 of this title unless brought within three years after the signing of the contract or lease, notwithstanding delivery of a deed to a purchaser."

6

of Kevin Porter [as the agent of Napa Development]. The TAC was in no way based on Mr. Porter's alleged misrepresentations, and did not rest on the same general set of facts."

The case would then go on to trial on the surviving causes of action, resulting in a clean sweep for Napa Development. The Levins have timely appealed from the ensuing defense judgment, but have confined the issues on appeal to asserting their subdivision (d) claim is viable and not time-barred.

## III.  DISCUSSION

Napa Development invites us to discuss the merits of the Levins' subdivision (d) claim first, and only reach the statute of limitations question if we first conclude the subdivision (d) claim is meritorious. The invitation is understandable – the language which prompted the Levins' subdivision (d) claim is in a form contract which appears, at the very least, to have been used by Napa Development in other sales of units in the Verasa complex. Moreover, similar subdivision (d) claims made by other investors may be pending in Napa Superior Court; in their motion to file their third amended complaint, the Levins briefly alluded to "the same claims" pending there. The obvious implication is that Napa Development would greatly welcome an appellate opinion saying its form contract complies with ILSA.

We decline the invitation. As the Supreme Court noted in *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, the principle of Occam's Razor – "'that the simplest of competing theories should be preferred over more complex and subtle ones'" is "'as valid juridically as it is scientifically.'" (*Id.* at p. 1328, fn. 10.) The question of whether the language in the form contract complies with ILSA is relatively complex and subtle in comparison with the relation-back issue.

The relation back issue is much more in tune with the maxim of William of Occam. The referee was right, because the subdivision (d) cause of action in the third amended complaint alleged a wholly different kind of injury than the one alleged in original complaint.

7

The Levins point to the incorporation by reference of all the terms of the sales contract in their original complaint, and assert that because the issue of compliance with subdivision (d) is a pure issue of law, not dependent on surrounding facts, they effectively alleged the same set of facts in the original complaint as the facts that gave rise to their subdivision (d) cause of action in the third amended complaint. For the Levins, the original complaint contained all the inchoate raw material from which a subdivision (d) claim could be fashioned – it was just lying there in the raw words of the contract – and therefore it satisfied the same general set of facts test used to ascertain relation back. It did not.

Relation back is a common law doctrine fashioned by the Supreme Court to ascertain whether a pleading at Time 2 satisfies the statute of limitations based on when a pleading at Time 1 was filed. *Barrington v. A.H. Robins Co.* (1985) 39 Cal.3d 146 remains, to this day, the latest definitive explication of the doctrine from the high court. *Barrington* first recognized the origins of the doctrine in *Austin v. Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596 and its later development in *Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932. *Smeltzley* announced a general rule, repeated by the *Barrington* court: "We later traced the evolution of the relation back doctrine in *Smeltzley v. Nicholson Mfg. Co.* [citation], and formulated a general rule: An amended complaint relates back to the original complaint, and thus avoids the statute of limitations as a bar against named parties substituted for fictitious defendants, if it: (1) rests on the same general set of facts as the original complaint; *and* (2) refers to the *same accident and same injuries as the original complaint*." (*Barrington, supra*, 39 Cal.3d at p. 151, italics added, citing *Smeltzley, supra*, 18 Cal.3d at pp. 936-937.) The need for both prongs has been reiterated in the appellate courts in the post-*Barrington* period. (E.g., *Goldman v. Wilsey Foods, Inc.* (1989) 216 Cal.App.3d 1085, 1094; *Boyle v. City of Redondo Beach* (1999) 70 Cal.App.4th 1109, 1119.)

8

The Levins mention only the first part of the *Barrington* test – the same general set of facts – and, as to that test, assume that mere incorporation by reference of the sales contract in their original complaint was enough to encapsulate all possible reasons on which one might seek to rescind that contract. Even as to the first prong the argument is suspect. Suppose, for example, that the Levins' original complaint merely alleged something to the effect of: "On June 29, 2007, plaintiffs entered into a contract to buy a condo unit in a Napa Valley resort; the contract is attached and hereby incorporated by reference. Plaintiffs now want out of the deal and hereby allege that they are entitled to rescind the contract based on any reason extractable from the language of the contract their lawyer can find prior to the close of trial." Hyperbolic though it may be, this hypothetical illustrates the flaw in the Levin argument. The theory that mere incorporation by reference of a contract supports relation back of any claim pertaining to the contract is simply way too broad a reading of the rule.

But even if, for sake of argument, we were to assume incorporation by reference of a contract might be enough to squeak by the "same general set of facts" prong of *Smeltzley* and *Barrington*, it certainly would not satisfy the same injury prong. What, we might ask, was the Levins' "injury" – or, more precisely, damage – under ILSA? By their own lights, it was the mere fact of entering into a contract that did not clearly tell them that if they defaulted, they would have 20 days to cure that default. Only if they were injured *that* way could they claim a two-year revocation period. But that *particular* injury was no where mentioned in their original March 2009 complaint, and apparently was not articulated until the third amended complaint in November 2011.

In *Lee v. Bank of America* (1994) 27 Cal.App.4th 197, this court had occasion to note that a demotion was not the same wrongful act as a future termination, hence allegations surrounding a wrongful demotion did not state the same injury as the future wrongful termination, hence there was no relation back. Likewise, in *Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 169, another district of

9

the Court of Appeal held there was no relation back where later claims based on discrimination did not relate back to original claims for overtime and contractual violations. The kinds of damage were different.

Here, we have distinctly different kinds of damage, and distinctly different alleged causes of that damage. In the original complaint, the damage was buying the unit caused by reliance on a false promise involving competing properties. In the subsequent complaint, the damage is itself the mere absence of required language in the contract involving the right-to-cure if there was a default, and that damage was also its own cause. Given these differences in the nature of the alleged damage, the Levins cannot satisfy the same injury test. Since the Levins do not argue for a state-law statute of limitations longer than the three-years ILSA gives them, the statute of limitations under ILSA ran, at the very latest, by August 2010. We therefore conclude the referee was correct in dismissing the claim, and the trial judge correct in accepting the referee's dismissal.

## IV. DISPOSITION

The judgment is affirmed. Respondent Napa Development shall recover its costs on appeal.

BEDSWORTH, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

MOORE, J.

10